John McCann – ID #024081998
13 Ponds Way
Oakland, NJ 07436
Tel: (201) 803-0530
Email: johnmccannlaw@gmail.com

Catherine Elston ID #015051990
C. ELSTON & ASSOCIATES, LLC
309 Morris Avenue
Spring Lake, New Jersey 07719
Tel: (732) 280-6911
Email: cmelston@elstonlaw.com
*Attorneys for Plaintiff Frank Trumbetti*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Frank Trumbetti, | Case No.: |
| Plaintiff, | |
| v. | |
| The BROUGH OF BELLMAWR; mayor CHARLES J SAUTER III A/KA "CHUCK SAUTER individually and in his official capacity; Councilmembers, JAMES "JAMIE" CASEY individually and in his official capacity; and PAUL DANGELIS individually and in his official capacity; and JAMES F D'ANGELO individually and in his official capacity; and CRIAG WILHELM individually and in his official capacity; and STEVEN B. HARGERTY individually and in his official capacity; and RAYMOND "RAY" BIDER individually and in his official capacity; and JAMES "JIM" BURLEIGH individually and in his official capacity; and Police Captain MICHAEL DRAHAM individually and in his official capacity; Police Officer B. ERTLE individually and in his official capacity; and Police Officer J VANCE individually and in his official capacity; BELLMAWR, chief of Police WALSH individually and in his official capacity; and | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

BRIAN KELLY; JOHN in his official capacity
and individual capacity; HOWARD LONG, ESQ,
individually and in his official capacity; JOHN
AND JANE DOE(S) Council members (1-10),
individually and in their official capacity; and
JOHNAND JANE DOE(S) 11-20 unknown
employees, officers, officials or agents of
BELLMAWR in their official capacity and
individual capacity; JOHN AND JANE DOE (S)
21-30 unknown municipal prosecutors of the
BROUGH OF BELLMAWR in their official
capacity and individual capacity; the TOWNSHIP
OF WINSLOW; and JOHN and JANE DOE(S)
31-40 unknown officers, officials, employees and
agents in their official capacity and individual
capacity;  JOHN AND JANE DOE (S) 41-50;
Unknown municipal prosecutors of WINSLOW,
in  their official capacity and individual capacity.

       Defendants.

Frank Trumbetti, residing in the County of Camden, State of New Jersey, by and through his undersigned attorney John McCann, Esq., by way of Complaint and Demand for Jury Trial ("Complaint") against Defendants, states as follows:

### INTRODUCTION

1.     This is a civil action brought by Plaintiff FRANK TRUMBETTI  for violation of Plaintiff's procedural and substantive  due process rights pursuant to the Due Process clause of the Fifth and Fourteenth Amendments of the United States Constitution and for civil rights violations under 42, U.S.C § 1983, 42 U.S.C 1985 First amendment as well in violation of the United States Constitution, Article XIV, Section 1: arising under Title 42 *U.S.C* § 1983. Plaintiff also asserts claims under the New Jersey Civil Rights Act, N.J.S.A § 10:6-2, Plaintiff also asserts claims under the  New Jersey Constitution Article 1, "Rights and Privileges,"  Paragraphs 1, 10, and 18. Defendants, by actingunder the color of law in issuing duplicative summonses/complaints andthen

failing to cooperate in their prosecution, misused their power, retaliated against and maliciously prosecuted Plaintiff, violated Plaintiff's First amendment protected speech and rights to due process, and abused Plaintiff's constitutional rights.

## PARTIES

2.      Plaintiff FRANK TRUMBETTI is the owner of Triple Threat Gym, LLC D/BA Atilis Gym Bellmawr and Rock Bottom Nutrition, LLC ("Plaintiff") a few short months before the pandemic he invested his life savings into this business.

3.      Defendant BOROUGH OF BELLMAWR, ("Borough"), is municipal corporation of the State of New Jersey with principal offices located at 21 East Browing Road, P.O. Box 368 Bellmawr, New Jersey 08099. The Borough operates under a Borough form of municipal government and as such its governing body is comprised of a six-person Council and one Mayor all Democrats. Borough is the employer and or supervisors for the Defendants in this matter and is liable, in part, through the doctrine of Respondeat Superior.

4.      Defendant MAYOR CHARLES "CHUCK" J SAUTER III, ("Mayor" or "SAUTER), is currently, and was, at all times relevant to the Complaint, the Mayor of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

5.      Defendant COUNCILMAN JAMES "JAMIE" CASEY, ("Casey"), is currently, and was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take

reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

6.    Defendant COUNCILMAN PAUL DANGELIS, ("Dangelis"), was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

7.    Defendant COUNCILMAN JAMES F. D'ANGELO, ("D'Angelo"), is currently, and was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity. .

8.    Defendant COUNCILMAN GRIAG WILHELM, ("Wilhelm") was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

9.    Defendant COUNCILMAN STEVEN B. HARGERTY, ("Hargerty") was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

10.    Defendant COUNCILMAN RAYMOND "RAY" BIDER, ("Bider") was, at all times relevant to the Complaint, a Councilmember of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

11.    Defendant JAMES "JIM" BURLEIGH, ("Burleigh") was, at all times relevant to the complaint an employee of the Defendant Borough and or the State of New Jersey who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

12.    Defendant Police lieutenant police Captain MICHAEL DRAHAM, ("Draham") was, at all times relevant to the complaint an employee of the Defendant Borough and or the State of New Jersey who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to

the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

13.    Defendant Police officer B. ERTL, ("Ertl") was, at all times relevant to the complaint an employee of the Defendant Borough and or the State of New Jersey who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

14.    Defendant Police officer J. VANCE, ("Vance") was, at all times relevant to the complaint an employee of the Defendant Borough and or the State of New Jersey who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

15.    Defendant CHIEF OF POLICE WALSH ('Walsh") was at all times relevant to the complaint an employee of the Defendant Borough and was the Chief of Police who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed, among other things, to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to affect the full declaratory injunctive relief and

damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

16.    Defendant BRIAN KELLY, ("Kelly") was, at all times relevant to the complaint an employee of the Defendant Borough and or the State of New Jersey who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed, among other things,  to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to affect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

17.    Defendant HOWARD LONG, ESQ. ("Long") who at all times relevant to the complaint an employee or agent of Defendant Borough who was involved in the events that gave rise to Plaintiff's claim for relief who was involved in the events that gave rise to Plaintiff's claim for relief. Defendant failed, among other things, to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant is sued to affect the full declaratory injunctive relief and damages demanded by the Plaintiff. Defendant is being sued individually and in his official capacity.

18.    Defendant JOHN and JANE DOE (S) 1-10 ("Council person Doe(s). Council person Doe(s) are unknown Council members of the Borough who were involved in the events that gave rise to Plaintiff's claim for relief. Defendant Doe (s) failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant Doe (s) are sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff.

19.     Defendant JOHN and JANE DOE (S) 11-20 ("unknown employees or agents"). Unknown employee or agents of the Borough who were involved in the events that gave rise to Plaintiff's claim for relief. Defendant Doe (s) 11-20 (s) failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant Doe (s) are sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff.

20.     Defendant JOHN and JANE DOE (S) 21-30 ("unknown Bellmawr municipal prosecutors") Unknow Bellmawr municipal prosecutors who were involved in the events that gave rise to Plaintiff's claim for relief. Defendant Doe (s) 21-30 (s) failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant Doe (s) are sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff.

21.     Defendant TOWNSHIP OF WINSLOW, ("Township") operates under the Township form of government in the State of New Jersey and located at 125 South Route 73, Braddock, New Jersey 08037. Borough is the employer and or supervisors for the Defendants in this matter and is liable, in part, through the doctrine of *Respondeat Superior*.

22.     Defendant JOHN and JANE DOE (S) 31-40 (unknown officers, officials, employees, and agents of the Township. Unknown officers, officials, employees, and agents of the Township who were involved in the events that gave rise to Plaintiff's claim for relief. Defendant Doe (s) 31-40 failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant Doe (s) are sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff.

23.     Defendant JOHN and JANE DOE (S) 41-50 ("unknown municipal prosecutors of the Township). Unknown municipal prosecutors of the township who were involved in the events that gave rise to Plaintiff's claim for relief. Defendant Doe (s) 31-40 failed to take reasonable steps to end the lawful conduct and may have contributed to the unlawful conduct alleged in this complaint. Defendant Doe (s) are sued to effect the full declaratory injunctive relief and damages demanded by the Plaintiff.

## JURISDICTION AND VENUE

24.     Jurisdiction properly lies in the District of New Jersey, Camden Court House pursuant to 28 *U.S.C.* § 1331 and 28 *U.S.C.* § 1343 for Plaintiff's claims under 42 *U.S.C.* § 1983, 42 *U.S.C.* §1985, and the Federal Constitution.

25.     Supplemental jurisdiction is proper in this Court over Plaintiff's pendent state claims, brought under the New Jersey Civil Rights Act, N.J.S.A §10:6-2, et seq., the New Jersey State Constitution, and common law pursuant to 28 *U.S.C* §1367.

26.     Venue is proper in this District pursuant to 28 U.S.C §1391(b)(2), as the events giving rise to these claims occurred in Camden County New Jersey.

27.      This Court has the authority to award costs and attorney fees under 42 *U.S.C.* § 1988, as well as under the New Jersey Civil Rights Act, N.J.S.A 10:6-2, et seq.

## FACTS RELEVANT TO ALL COUNTS

28.     At all times relevant to this complaint, Plaintiff Frank Trambetti owned and operated Triple Threat Gym, LLC, D/B/A Atilis Gym Bellmawr ("Plaintiff") and in 2019 registered with the Director of Consumer Affairs of the State of New Jersey required under New Jersey law. N.J.S.A. 56:8-40 and maintains a property interest in his business.

29.      In response to the Covid-19 pandemic, Governor Murphy issued Executive Order 107, 119, and 138 requiring non-essential business, including Plaintiff's to close.

30.      Governor Phil Murphy fully lifted major COVID-19 restrictions for government buildings and other indoor public spaces in late May 2021 when he signed Executive Order 242 eliminating the indoor mask mandate and six-foot distancing requirement in public spaces.

31.      In early May of 2020, Plaintiff's mother was admitted to the hospital for diverticulitis. While at the hospital, notwithstanding all of the COVID-19 State mandated protocols, Plaintiff's mother contracted COVID-19 and died.

32.      Between May 18,-22 2020 Defendant, under the color of law, issued, Plaintiff multiple summonses/complaints for alleged violations of Executive Orders and municipal codes, including N.J.S.A. 2C:33-12(a). They are: May, 18, 2020 summons #006622 for "Violating Governor Order A9:49H; May 18, 2020 summons 006630 for opening a gym in violation of Executive Order 107 and Maintaining a Nuisance, N.J.S.A; May 19, 2020 summons 006629 for opening a gym in violation of Executive Order and Maintaining a Nuisance N.J.S.A. 2C:33-12(a) May 20, 2020 summons 006652 for violation of order or rule… A9:49H; May 20, 2020 summons 006626 for opening the gym and Maintaining a Nuisance N.J.S.A 2C:33-12(a).

33.      One complaint, dated May 19, was signed by police officer. B. Ertl for "Violation of Governor Order A9:49H."

34.      On May 22, 2020 a complaint and summons were signed by Defendant Sgt. J Vance of the Borough's police department alleging violations of Executive Order 107 and violations of N.J.S.A. 2C:33-12(a), N.J.S.A 2C:33-12(b), and A:9-49H.

35.      Plaintiff's attorney entered appearances and a not guilty pleas on behalf of Plaintiff and requested discovery.

36.     On or about July 28, 2020, John McCann, Esq. entered appearances in Borough's Municipal Court for five different defendants who were alleged visitors of Plaintiffs business for violations that occurred in May of 2020, the same time frame as the initial complaints against Plaintiff.

37.     All of these cases for the five additional defendants were dismissed through a normal plea bargain process on or about February 17, 2023.

38.     On June 28, 2020 Defendant Burleigh signed a summons006404, against Plaintiff for the violation Failure to Obtain change of use Certificate, municipal code 260-152.

39.     July 28, 2020, Plaintiff was issued a mercantile license by Bellmawr, effective June 1, 2020, and with an expiration date of May 31, 2021, but was simultaneously notified of a pending revocation to be the subject of discussion at a special meeting of the mayor and council of August 4, 2020.

40.     On August John McCann, Esq., on behalf of Plaintiff, wrote a letter to the Borough seeking a stay of the revocation proceeding due to criminal complaints pending in the Borough's own municipal court against Plaintiff. The meeting was moved to August 11, 2020 starting time 5:00 p.m.

41.     Plaintiff was denied a meaningful administrative hearing or any pre-deprivation hearing with sworn testimony, discovery, and cross-examination of witnesses pursuant to the Mathews v Eldridge Test prior to the attempted revocation of his license. Instead, the Borough chose to move forward with the special council meeting of the Mayor and Council.

42.     Plaintiff's counsel appeared at the meeting. It was at this time that an informational packet was provided to Plaintiff which the Borough relied upon during its meeting. At no time before this meeting did the Borough give notice of the documents or names of people that would

publicly speak against the Plaintiff. The ordinance which Defendant relied upon is Borough ordinance §266-19.

43.  On the day of the Special Meeting, at 3:23 p.m. Howard Long, the Borough of Bellmawr's Municipal Solicitor ("Long") sent an email claiming to supply "in advance of this evening's meeting."

44.  Mr. Long knew that Counsel for Plaintiff was traveling from Oakland New Jersey and was facing a minimum of a two-and-a-half-hour commute to Bellmawr on the New Jersey Turnpike during rush hour traffic. Plaintiff's Counsel was never provided the information prior to it being handed to him about 20 minutes before the start of the meeting.

45.  At the outset of the meeting, Long incorrectly stated the legal bases pursuant to N.J.S.A 40A: 60-1 for the adoption of the Borough's Zoning ordinance 266-19.

46.  Mr. Long failed to recognize the State's jurisdiction regarding the regulation of health clubs.

47.  Mr. Long stated the subject matter to be discussed at the meeting was Item A of the information packet, the mercantile License of the Plaintiff's business, Triple Threat Gym, LLC doing business as Atilis Gyn in Bellmawr and identified Plaintiff as the owner.

48.  Mr. Long invited questions from the mayor and council before going on to describe the reasons the meeting was being held by stating:

> Is there any questions from any members of
> Council or the Mayor of me or anyone who --
> who's provided communication? I'm not going to
> call it testimony because it's not sworn testimony.
> This is not a court of law. This is not a criminal

court. This is a low level administrative proceeding where the law says we have to provide information regarding safety issues and if you determine that this facility's ongoing operation is unsafe, you have an ability or you may decide not to or you may decide to consider a revocation of their license and, again, the -- with regard to the safety standard. And before we could take any action, it's imperative that we give these folks an opportunity to defend themselves. As I said to Counsel, that could be by him calling the owners, rep -- making representations himself, any kind of documents that he wanted to submit that this was going to sort of be fairly open and informal. There are no rules of evidence. I won't -- he didn't stop me from saying anything and I appreciate that. There were no objections. This is not a court. So, Counsel, anything that you want to say in defense of your client, this is now your opportunity to be heard.

49.    Mr. Long latter again articulated the legal standard he believed to be applied to the meeting. He stated:

This is not a trial, and this is not a criminal proceeding. This is a minor administrative proceeding where you're to consider that if you believe that this is unsafe, this business is unsafe to your residents of Bellmawr and you believe that laws and Ordinances have been violated, This is a minor administrative proceeding where you're to consider that if you believe that this is unsafe, this business is unsafe to your residents of Bellmawr and you believe that laws and Ordinances have been violated.

50.    No testimony was taken, no witnesses were sworn in.

51.    Defendant Draham spoke during the public session stating, among other things that he observed Plaintiff open their gym on May 18th, 19th, and 20th of 2020.

52.    Defendant James Burleigh who was in a Zoning Officer and in charge of Property Maintenance for Defendant Borough spoke in the public portion of the meeting on behalf of others with no direct knowledge of the alleged violations that were alleged to have occurred. The Mayor and Council did not immediately pass a resolution to take away his license. Although they voted, they did not pass a resolution revoking his license until, based on information and belief, the Spring of 2021 and never served the resolution on the Plaintiff.

53.    Defendant Chief of Police Walsh spoke at the meeting regarding the Summons and Complaint issued by the Prosecutor's officer.

54.    At the meeting Defendant Councilman D'Angello publicly admitted the "no" votes casted were, in part, retaliation for the Plaintiff engaging in constitutionally protected activity. Pursuant to a transcript dated January 20, 2021, while engaging in a colloquy with a member of the public, D'Angello, Stated, "So, now the seven of us here have to make decision on a circus that is continually going through this town. And I will tell you, sir, they have had it because its in their town. We're a small town, not that big, okay/ Pretty much everything runs pretty smooth until this happens. Now, I would eventually guess that if these two gentlemen came and talked to the Mayor or—any of us, primarily the Mayor, it wouldn't have got to this point, Okay? "

55.    DAngello further stated:

> …That's fine. **But** (*emphasis added*), I want you to understand the decisions -most of the decisions that came here tonight, the no votes, yeah, the bottom line is he broke the law. The law is whatever and whether you believe it's the law or not, the Governor came down and this is the way it is and this is what it is. **But** (*emphasis added*), everyone – I would venture to guess that everyone at this table remembers the YouTube videos where they went after our cops. And here's something that a lot of people don't know, **our town we like our cops. We're police friendly in this town. We like every one of them, personally like them. And when**

> **somebody goes out and attacks our cops, you attack *us* because we like these guys**. (*emphasis added*) Like, why would you go after *our* cops and, yet they did. **So everything that they did, okay got us to this point.** (*emphasis added*). This isn't something we just woke up one morning and said hey, let's rook them. Let's put him out of business – this is a progressive chain that got us here. **And I guarantee you, you strike me as being somebody who's on the ball, knows this stuff, if this was in your town, you'd never let this happen**. (*emphasis added*). See Special Meeting of the 77—82). In part D'Angello stated,

56.    At the conclusion of the public presentation of the Plaintiff's attorney was never offered the opportunity to ask questions of the municipal representatives who spoke against the Plaintiff.

57.    The Defendant Mayor, asked for a motion, Defendant Casey put forth the motion to revoke Plaintiff's Mercantile License, Defendant Wilhelm seconded the motion followed by a roll call vote where Defendant DeAngelis voted "no," Defendant Casey voted "yes," D'Angelo voted "yes," Defendant  Wilhelm voted, "yes,"  Defendant Hagerty voted, "yes," and Defendant Bider voted, "yes,"

58.    The motion was not on resolution put forth by the governing body.

59. The day after the hearing, notwithstanding that there was no formal action taken by the governing body, the day after the hearing Augusts 12, 2020, Defendant Burleigh issued a series of daily summonses for "operating without a mercantile license" Code 266-13, through August 20, 2020. Summonses issued are August 12, 2020, # 006409; August 13, 2020, # 00641; August 13, 2020, # 006411; August 14, 2020 # 005993; August 15, 2020, # 006414: August 16, 2020, # 005996; August 17, 2020, # 005998; August 18, 2020, # 006416; August 19, 2020, # 006419; August 20, 2020, # 006542.

60. On or about August 21, 2020, Plaintiff became a regional campaign rally location for the Rick Mehta Campaign for United States Senate and his visitors became volunteers for the Mehta Campaign.

61. Subsequent to the vote to take away Plaintiff's license, on or about September 24, 2020, Plaintiff filed a Prerogative Writaction against the Defendant Borough in State Court, which ultimately was unsuccessful.

62. Subsequent to the filing of the State action against the Borough, the municipal summonses/complaints were transferred to Defendant Winslow Township.

63. Subsequent to the transfer of the complaints to the Township, on December 1, 2020 Defendant Burleigh issued another series of daily summonses for "operating without a mercantile license" Code 266-13, through December 10, 2020. They are December 1, 2020, #006559; December 2, 2020, # 006560; December 3, 2020, # 006521; December 4, 2020, #006522; December 5, 2020, # 006523; December 6, 2020 # 006524; December 7, 2020, #006525; December 8, 2020 #006526; December 9, 2020 # 006527; December 10, 2020, # 006528; December 11, 2020 # 006529.

64.    On January 21, 2022 Plaintiff again, inexplicitly, began to receive summonses for Operating without a mercantile license, 266-13 Article II, this time, from Defendant Kelly.

65.    Those summonses are: January 21, 2022, # 07261; January 24, 2022, # 007270; January 26, 2022, # 007271; January 27, 2022, # 007272 February 1, 2022, # 007273; and February 2, 2022, # 007276.

66.    From when the first summonses/complaints were issued against the Plaintiff, the actions of the Defendants received continuous worldwide media coverage.

67.    On January 24, 2022, in an effort to intimidate Plaintiff, the Plaintiff's landlord, Browning Sq. Inc. ("Browning"), inexplicitly began receiving summonses from Defendant Kelly for operating without a mercantile license 266-13 Article II, notwithstanding Browning has no interest in Plaintiff's business.

68.    Those summonses are: January 24, 2022, # 007264; January 26, 2022, # 007265; January 27, 2022 # 00726; February 1, 2022; # 007275; February 2, 2022, # 007278;

69.    Sometime in August 2021, after Plaintiff filed a complaint against the Borough the Plaintiff's municipal complaints were transferred to Winslow Township.

70.    The Law Office of John McCann maintained communication with Winslow's Court and the Bellmawr Court Clerks asking when the Plaintiff's matter would be scheduled as well as requesting discovery for the matter. The Plaintiff made an appearance in Winslow's Court in 2022 and the matter was carried because the prosecutor was unable to procced because he "had nothing" from Bellmawr. Bellmawr sent a police officer to observe the proceedings.

71.    In the summer of 2023, the Plaintiff and his attorney again appeared in Winslow, this time before the Honorable Municipal Court Presiding Judge of Vicinage 4 division, Carol Fabietti. A different prosecutor stated he would not be able to proceed because he did not have

anything from Bellmawr. On that date, she allowed the Plaintiff to speak of his frustration at the matter being carried and going on so long. She directed to prosecutor to again contact Bellmawr. Again, Bellmawr sent a police officer to observe the proceedings.

72.    On March 21, 2024 in an email sent to the Court Clerks of both Bellmawr and Winslow, an attorney from the Law Office of John McCan again requested discovery on the matter and stated, "Since being transferred the matter had stalled for a significant amount of time warranting the state's dismissal."

73.    On April 24, 2024, the matter was brought again before the Honorable Judge Carol Fabietti, Again, Bellmawr sent a police officer to observe the proceedings.

74.    On the record she asked the prosecutor whether he was ready to proceed, and she could not because she had nothing from Bellmawr. On the record the judge thoroughly questioned the prosecutor and the Court Clerk regarding communication with Bellmawr, both confirming they did not receive any cooperation on Plaintiff's matter during the entire duration of Plaintiff's matter.

75.    The Judge invited the Plaintiff's attorney to present an oral motion for dismissal. The Court dismissed all summonses/complaints for lack of prosecution and finding that the Borough did not possess the necessary authority to issue a mercantile license in the first place. The Court further found on the record that Bellmawr failed to cooperate with Winslow in prosecuting the case against the Plaintiff.

76.    These findings have been adjudicated and not appealed by the Defendants.

## COUNT I

### MALICIOUS PROSECUTION
### 42 U.S.C § 1983

77.    Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

78. Defendants knew or should have known that the regulation of health clubs are within the sole authority of the State of New Jersey and acted with malice when it issued violations for operating without a mercantile license.

79. Defendants knew or should have known that they didn't have the authority to issue violations for operating without a mercantile license prior to the governing body taking official action by voting on a resolution to revoke Plaintiff's mercantile license.

80. Defendants acted under the color of law when as authorized enforcement agents of the Borough, they signed 34 criminal complaints against Plaintiff which were not authorized by law.

81. Defendants acted with malice when they failed to cooperate with the Township Municipal Court and prosecutors for over 3 years by failing to provide them with information, witness availability, basic communication and discovery for all the violations issued by Defendants.

82. All of the charges against the Plaintiff were dismissed by the Presiding Judge of the Vicinage who supervised all of the Municipal Courts in the Vicinage with prejudice and without a finding of probable cause.

83. The Judge specifically dismissed the Plaintiff's complaints against him for lack of prosecution. She stated the dismissal was warranted finding that Bellmawr failed to cooperate with the Township's Court and prosecutors and did not have the authority to issue summonses for operating without a mercantile license.

84. The Defendants acted with malice because they knew they were not cooperating with the Township but then sent a police officer to all three of Plaintiff's appearances. These

officers witnessed that the reasons for the delays were due to a failure of Bellmawr and its agents to provide any information necessary to prosecute the Plaintiff's charges for over three years.

85.    The Defendants are liable under the doctrine of *respondeat superior* for all of the actions of their police department, staff, prosecutors, Code enforcement officials and/or Defendant John and Jane Doe(s).

86.    As a result of the foregoing malicious prosecution, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

a.    Enter judgment in favor of Plaintiff against Defendants;

b.    Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000;

c.    Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

d.    Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

e.    Any other further relief as this Court deems just and proper.

## COUNT II

**RETALIATION**
**42 U.S.C § 1983**

87.    Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

88.     Defendants violated provisions of 42 U.S.C. Sec. 1983, in that Defendants, acting under color of State law, deprived Plaintiff of the privileges and immunities secured to him by the First Amendment of the United States Constitution, in particular, the right to hold political views and speak out against the State lockdowns without infringement of the First Amendment right to freedom of speech.

89.     The Plaintiff and his business became an international symbol of defiance against, what we now know, were ineffective public health measures. Plaintiff's message of prompting proper health and effective remedies for COVID-19 such as Ivermectin on many national networks, including CNN, Fox News numerous pod casts was seen by millions of people. Unfortunately, his views became to be seen as partisan political views and was not being received well mostly by members of the Democratic Party, notwithstanding that we now know that masks andlockdowns didn't work,among other measures that failed to work.

90.     At the August 11, 2020 special meeting of the Mayor and Council, a defendant councilman openly stated he was upset at all the attention and people that were coming to Plaintiff's facilities because Plaintiff was refusing to close his business.

91.     Defendants retaliated against Plaintiff for engaging in protected activities, Defendants intentionally harassed and harmed Plaintiff by and through the issuance of summonses/complaints that they had no authority to issue, in part to protect their town from the "circus," and in retaliation for perceived attacks on their police officers.

92.     The first summonses/complaint for operating without a mercantile license was issued by Defendants the very next day, and were repeatedly issued, until August 21, when Plaintiff declared his business was going to be a rallying place for the Rick Mehta for U.S. Senate campaign and that his visitors would be signing up to be volunteers for the campaign.

93.    Following the end of the election, Defendants again began to issue summonses/complaints for operating without mercantile license, from December 1, 2020 through December 10, 2020.

94.    The next round of summonses/complaints, five in this round, were issued between January 24, 2022 and February 2, 2022.

95.    On the same dates, Plaintiff's landlord, Browning Sq. Inc., received five summonses/complaints for operating without a mercantile license.

96.    There is no law that required the landlord to obtain such a license.

97.    There is no explanation as to the random nature of the Defendants' actions when deciding to issue summonses/complaints for operating without a mercantile license.

98.    As a direct and proximate result of the retaliatory actions of the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

a.  Enter judgment in favor of Plaintiff against Defendants.

b.  Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

c.  Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

d.  Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

e.  Any other further relief as this Court deems just and proper.

## COUNT III

### ABUSE OF PROCESS
### 42 U.S.C § 1983

99.     Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

100.     Defendants abused process by issuing summonses/complaints before any governing body resolution to revoke Plaintiff's license and latter reissuing the summonses/complaints in 2022 knowing that the regulation of Health Clubs were the sole purview of the State of New Jersey.

101.     Defendants maliciously used the legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the process employed.

102.     Defendants knew when they issued the first violation for operating without a mercantile license that the Mayor and Council had yet to pass a resolution revoking Plaintiff's license, and they knew that they didn't have the authority pursuant to New Jersey law to issue a mercantile license in the first place.

103.     The Defendants used the legal process under the color of law to demonstrate to their constituents they were not going to tolerate dissent to the Governor of New Jersey's ineffective public health measures. This was a benefit to the Defendant demonstrating a personal bias, prejudice or animosity to Plaintiff because they wanted to stop the "circus" and respond to perceived attacks on their police officers.

104.     As a direct and proximate result of the abuse of process actions of the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated which

proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

f. Enter judgment in favor of Plaintiff against Defendants.

g. Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

h. Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

i. Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

j. Any other further relief as this Court deems just and proper.

## COUNT IV

**REFUSAL TO PREVENT
42 U.S.C § 1983**

105. Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

106. Defendants failed to prevent the ongoing violations of Plaintiff's civil rights despite having the authority, ability and duty to do so.

107. At all times relevant to this complaint, the Defendants acted at the direction and control of its elected officials, police officers, code enforcement officials, supervisors and John and Jane Doe (s).

108. Acting under the color of law pursuant to its mercantile licensing ordinance, the Defendants knowingly, intentionally, or in reckless disregard of Plaintiff's rights, failed to instruct,

supervise, control and discipline, on a continuing basis, its police officers and code enforcement officials in their duties to refrain from maliciously harassing Plaintiff who was acting in accordance with his constitutional and statutory rights, privileges and immunities; failed to prevent them from issuing summonses/complaints; and failed to require them to cooperate with Winslow Municipal Court and its prosecutor; and conspired to violate the rights and privileges, and immunities guaranteed to Plaintiff by the Federal Constitution.

109.    As a direct and proximate result of these actions of the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

k. Enter judgment in favor of Plaintiff against Defendants;

l. Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

m. Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

n. Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

o. Any other further relief as this Court deems just and proper.

## COUNT V

**CONSPIRACY
42 U.S.C § 1983**

110.     Plaintiff repeats any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

111.     Defendants conspired to deprive Plaintiff of his constitutional rights by coordinated actions under the color of law.

112.     As a result of the concerted unlawful and malicious conspiracy of Defendants, individually or jointly, through their employee, agents, or servants, Plaintiff was deprived of constitutional rights afforded to him, without due process of law and in violation of his rights secured under the Federal Constitution.

113.     As a direct and proximate result of these conspiracy by the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

p. Enter judgment in favor of Plaintiff against Defendants.

q. Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

r. Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

s. Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

t. Any other further relief as this Court deems just and proper.

## COUNT VI

**VIOLATION OF THE UNITED STATES CONSTITUTION FORTH, FIFTH AND FOURTEENTH AMENDMENTS**

114. Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

115. Defendants' actions deprived Plaintiff of procedural and substantive due process rights in connection with his attempted license revocation.

116. Plaintiff's deprived Plaintiff of his life liberty and property interests in his business and investments, without lawful justification, bringing him reputational damages through their unlawful actions acting under the color of law.

117. Defendants purposefully interfered with Plaintiff's property interests when issuing summonses/complaints under the color of law when they lacked authority to do so and when they failed to cooperate with Winslow Township.

118. Defendants failed to provide the proper constitutional procedural safeguards pursuant to the level of deprivation at stake - Plaintiff's license – by failing to apply the balancing test the requirement under the United States Constitution concerning his property right in his license and business.

119. As a direct and proximate cause of Defendants' violation of substantive due process, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

u. Enter judgment in favor of Plaintiff against Defendants.

v. Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

w. Award Plaintiff reasonable attorneys' fees and costs as permitted

by any applicable provision or law;

x. Award Plaintiff prejudgment interest and post- judgment interest

to the maximum extent permitted by law; and

y. Any other further relief as this Court deems just and proper.

## COUNT VII

## VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT (N.J.S.A. 10:6-2)

120.    Any and all allegations contained in any other paragraph of this Complaint are incorporated by reference as if fully set forth herein.

121.    Defendants acting under the color of law, deprived Plaintiff of his rights secured by the New Jersey Constitution and laws.

122.    Defendants action improperly interfered with Plaintiff's employment opportunity to earn a living and to be secure in his reputation damages.

123.    Defendants knowingly issued summonses/complaints without authority and failed to cooperate with Winslow Township so as to maintain the prosecution for three years.

124.    Those charges hanging out in the public for that long a period of time and the false public statement concerning attacks on Bellmawr's Police Department, caused reputational damages to Plaintiff.

125.    By their conduct, Defendants have violated the New Jersey Civil Rights Act by interfering with Plaintiff's Federal and State Substantive and procedural due process rights, including his rights to employment opportunities free of government interference. Defendants specifically stated the revocation Special meeting of the Mayor and Council was a result of the "circus" brought to his community and alleged attacks on his police department.

126.    As a direct and proximate result of these actions by the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

z. Enter judgment in favor of Plaintiff against Defendants.

aa. Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

bb. Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

cc. Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

dd. Any other further relief as this Court deems just and proper.

## COUNT VIII

**SLANDER, *PER SE*/LIBEL, DEFAMATION.**

127.    Any and all allegations contained in any other paragraph of this complaint are incorporated by reference as if fully set forth herein.

128.    Defendants have repeatedly and intentionally, and/or with reckless disregard for the truth, made false and defamatory statements concerning Plaintiff, accusing him of causing the attacks on Defendants' Police Department.

129.    Defendants made these statements in public at a Special Meeting of the Mayor and Council knowing the meeting was drawing worldwide press coverage.

130.    The statements made by the Defendants are clearly harmful to Plaintiff's reputation within his community and has reduced his opportunity for economic benefit because the alleged activity is considered criminal conduct.

131.    As a direct and proximate result of these actions by the Defendants, Plaintiff's constitutional rights secured by the Federal Constitution were violated which proximately caused Plaintiff to suffer great anxiety, humiliation, embarrassment, economic damages and other related injuries in the amount of $10,000,000.

**WHEREFORE, Plaintiff prays that this Court:**

ee.    Enter judgment in favor of Plaintiff against Defendants.

ff.    Award compensatory, consequential, and punitive damages to Plaintiff in an amount of $10,000,000.

gg.    Award Plaintiff reasonable attorneys' fees and costs as permitted by any applicable provision or law;

hh.    Award Plaintiff prejudgment interest and post- judgment interest to the maximum extent permitted by law; and

ii.    Any other further relief as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Seventh Amendment of the Federal Constitution, Plaintiff hereby requests a trial by jury on all issues so triable.

The Law Office of John McCann
John McCann – ID #024081998
13 Ponds Way Oakland, NJ 07436
Tel: (201) 803-0530
Email: johnmccannlaw@gmail.com

Catherine Elston ID #015051990
C. ELSTON & ASSOCIATES, LLC
309 Morris Avenue
Suite E
Spring Lake,, New Jersey 07719
Tel: (732) 280-6911
Email: cmelston@elstonlaw.com

Attorneys for Plaintiff

DATED: April 24, 2025                    By:  /s/     John McCann

                                              John McCann , Esq.


                                         By:  /s/     Catherine M. Elston

                                              Catherine M. Elston, Esq .


## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I, John McCann, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, that the matter in controversy is not the subject of any other action now pending in any court or in any other jurisdiction or administrative proceeding.

DATED: April 24, 2025                    /s/ John McCann

                                         John McCann, Esq.


## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I, Catherine M. Elston, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, that the matter in controversy is not the subject of any other action now pending in any court or in any other jurisdiction or administrative proceeding.

DATED: April 24, 2025                    /s/ Catherine M. Elston

Catherine M. Elston, Esq.